[Cite as *Larbig v. Larbig*, 2017-Ohio-7288.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

GLENN D. LARBIG,                           :        **O P I N I O N**

      Plaintiff-Appellant,           :

      - vs -                               :        **CASE NO.  2016-A-0070**

LISA LARBIG,                                   :

      Defendant-Appellee.          :

Appeal from the Ashtabula County Court of Common Pleas, Domestic Relations Division, Case No. 2012 DR 034.

Judgment: Affirmed.

*Thomas J. Sacerich,* Sacerich, O'Leary & Field, 8302 Yellowbrick Road, Mentor, OH 44060 (For Plaintiff-Appellant).

*Hans C. Kuenzi,* Hans C. Kuenzi Co., L.P.A., Skylight Office Tower, 1660 West Second Street, Suite 660, Cleveland, OH  44113 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, P.J.

{¶1}   Appellant, Glenn D. Larbig, appeals from the judgment of the Ashtabula County Court of Common Pleas, Domestic Relations Division, adopting the magistrate's decision, which terminated the parties' shared parenting agreement and designated appellee, Lisa Larbig, residential parent and legal custodian of the parties' minor daughter.  We affirm.

{¶2} The parties were divorced by final decree on May 13, 2013. The decree incorporated a shared parenting plan for their minor child, G.L., born April 20, 2009. The parenting plan provided that each party would serve as residential parent and legal custodian while G.L. was with that parent. Appellee was designated residential parent for school enrollment purposes. Appellant had parenting time on the following four-week cycle: The first, second, and third weekends, from Friday at 9:00 p.m. to Sunday at 7:00 p.m. Appellant did not have G.L. on the fourth weekend. In addition, for five of appellant's weekends throughout the year, he had the right to retain G.L. until Monday, at 11:45 a.m., if he was working that day, or 7:00 p.m., if he was not working. Holidays, Father's Day, and G.L.'s birthday were set in accordance with a standard order. Appellant also had parenting time for three weeks each summer to be exercised in increments of one week and for no more than two consecutive weeks at a time.

{¶3} On September 10, 2013, appellant filed a motion for a restraining order on appellee's parenting time and an emergency motion for change of parental rights and responsibilities. In his motion, appellant alleged that appellee's live-in boyfriend was physically and possibly sexually abusing G.L. On October 25, 2013, the parties signed an agreed judgment entry, providing that all pending motions were dismissed and all restraining orders dissolved. Appellant, however, continued to make routine allegations that appellee and her boyfriend abused G.L., conceding he had filed "numerous" reports with both the Ashtabula Sheriff's Department as well as children's services. Children's services investigated the allegations. They were ultimately deemed unsubstantiated and no charges were filed and no case was opened.

{¶4} On December 16, 2013, appellee filed a motion to terminate shared parenting and sought sole custody of G.L. On February 20, 2014, appellant filed a similar motion also seeking sole custody. Appellant additionally sought a custody evaluation and the court subsequently appointed Farshid Afsarifard, Ph.D., to evaluate the parties. The report was filed and the matter came on for hearing before the magistrate.

{¶5} After hearing testimony from the parties, as well as considering the pre-divorce report filed by the guardian ad litem, as well as Dr. Afsarifard's report, the magistrate recommended the shared parenting plan be terminated and appellee be designated residential parent and legal custodian of G.L. Appellant was given parenting time on alternating weekends from Saturday at 9:00 a.m. until Monday, when he would take the child to school. If there is no school, appellant was given companionship until he is scheduled for work on Monday. Appellant filed objections to the decision, to which appellee responded. Ultimately, on November 21, 2016, the trial court adopted the magistrate's decision. This appeal follows. Appellant assigns two errors for our review. His first assignment of error provides:

{¶6} "The trial court erred in adopting the magistrate's decision that wrongully considered allegations set forth in the guardian ad litem's report that contained matters that occurred prior to the May 13, 2013 hearing when the shared parenting plan was adopted."

{¶7} Appellant contends that, pursuant to R.C. 3109.04(E)(1)(a), the trial court was statutorily required to consider only "facts that have arisen since the prior order * *

*." Because the GAL's report was based upon facts that occurred prior to the previous order, the trial court erred in considering the report. We do not agree.

{¶8} R.C. 3109.04(E)(1)(a) provides, in relevant part:

{¶9} The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, *based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree,* that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. (Emphasis added)

{¶10} Appellant is correct, the foregoing statute permits a court to modify a prior decree *only if* it determines, based upon facts that have occurred since the prior decree. R.C. 3109.04(E)(1)(a), however, does not control the court's action in this matter. That statute authorizes the court to *modify* a prior decree allocating parental rights and responsibilities. In this case, the parties sought to *terminate* the prior shared parenting agreement. While termination is, semantically, a form of modification, the General Assembly has specifically provided a different standard when parties seek to have a shared parenting plan terminated. To wit, R.C. 3109.04(E)(2)(c), provides, in relevant part:

{¶11} (2) In addition to a modification authorized under division (E)(1) of this section:

{¶12} * * *

{¶13} (c) The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both

4

parents, that shared parenting is not in the best interest of the children.

{¶14} A court may accordingly terminate a shared parenting order if it determines shared parenting is no longer in the child's best interest. *In re K.R.*, 11th Dist. Trumbull No. 2010-T-0050, 2011-Ohio-1454, ¶42, citing *Williamson v. Williamson*, 2d Dist. Clark No. 2003 CA 30, 2003-Ohio-6540, ¶15. In assessing the child's best interest, the court is required to consider the factors set forth under R.C. 3109.04(F)(1), as well as any other relevant factors. Simply because the GAL's report was filed prior to the original divorce decree, does not imply it is irrelevant to the child's best interest. Indeed, the report provided information regarding how the parties interacted with one another as well as with the child prior to the original decree; and this information would be useful to evaluating the parties' relative relationships since that decree.

{¶15} We are aware that this court, in *Janecek v. Marschall*, 11th Dist. Lake Nos. 2013-L-136 and 2014-L-013, 2015-Ohio-941, utilized the standard set forth in R.C. 3109.04(E)(1)(a) in an appeal from a judgment terminating a shared parenting agreement. As discussed above, that standard applies to modifications, not orders terminating a shared parenting agreement. That case used the improper statutory standard and therefore we decline to follow it.

{¶16} Because the best interest analysis governed the instant case, the trial court did not err in considering the GAL's pre-decree report.

{¶17} Appellant's first assignment of error lacks merit.

{¶18} Appellant's second assignment of error provides:

{¶19} "[The] trial court erred as a matter of law and abused its discretion, in its decision that is against the manifest weight of the evidence, by adopting the

5

magistrate[']s decision and therefore determining defendant-appellee, Lisa Larbig, as the residential parent of the parties' minor child, was in the best interest of the child."

{¶20} "The standard of review generally applied when reviewing a court's adoption of a magistrate's decision is abuse of discretion." *Defrank-Jenne v. Pruitt,* 11th Dist. No.2008-L-156, 2009-Ohio-1438, at ¶8. An "abuse of discretion" describes a judgment neither comporting with the record, nor reason. See, e.g., *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

{¶21} Appellant contends the trial court erred in adopting the magistrate's decision because the weight of the evidence demonstrates he is better suited to be the residential parent.

{¶22} Appellant first takes issue with the magistrate's conclusion that there were no serious concerns with appellee's physical health and mental health. He notes appellee is in a great deal of pain due to a lingering, chronic back injury; appellant, on the other hand, has no medical problems. He further points to Dr. Afsarifard's report, which stated appellee was under a great deal of emotional and psychological pressures. While appellant acknowledges the doctor made similar observations about him, he also points out the doctor believed he had adequate coping resources to manage his stress.

{¶23} While the foregoing is accurate, it must be considered in context. Appellee testified she was not completely compromised by her physical injury. She stated she is able to still do household work and raise her children, but certain tasks take longer. Moreover, the doctor's report relating to appellee's stresses indicates she, like appellant, possesses internal resources to help her cope with the pressures. Dr.

Afsarifard did observe that appellee becomes overwhelmed sometimes. This, however, does not imply appellee's mental health is a matter of concern.

{¶24} Next, appellant takes issue with the magistrate's finding that, on certain occasions, appellee has not been fully cooperative about arranging make-up visitation. Appellant complains that appellee *never* made arrangements for make-up visitation. As a result, he maintains the magistrate erred when it made this finding.

{¶25} Assuming appellee did not make arrangements for make-up visitation, this does not undermine the court's finding that she failed to do so "on occasion." Moreover, there was testimony indicating that appellant failed to strictly comply with the visitation schedule as well, in particular when his work hours changed. According to appellee, appellant's work schedule changed during the winter, holiday season. Appellant, however, failed to notify appellee of the change, even though this affected the time he would pick up G.L. This issue was resolved and, overall, the record demonstrates that both parties, in general, honored and facilitated visitation in accordance with the underlying shared-parenting plan. In short, the magistrate's finding was consistent with the testimony.

{¶26} Appellant next takes issue with appellee's failure to attend stress and anger management classes, despite prior recommendations. While appellee admitted she had not taken these courses "yet," she stated her failure to do so was a function of the medical issues which she has been addressing. In any event, appellee's testimony does not necessarily imply she was refusing to take the classes or would fail to take the court-ordered parenting classes with her fiancé in the future.

7

{¶27} Appellant next notes that the magistrate had a serious concern with appellee's previous use of corporal punishment, but the magistrate found there was no evidence such punishment had occurred "over the past year and a half." Appellant maintains, however, there is nothing to prevent such punishment from resuming once appellee is no longer under the scrutiny of the court or the appointed mental health professionals. While this may be true, the magistrate had evidence before her substantiating her finding that corporal punishment had ceased. There was some credible evidence to support her finding as well as her conclusion that the cessation of such punishment will be permanent. And if evidence arises in the future that appellee has commenced using such punishment, that issue may be broached in a future proceeding. After all, custody and visitation are products of a judicial order. In this respect, the parties will remain under some scrutiny of the court if one or the other runs afoul of the mandates of the order.

{¶28} Appellant additionally contends the magistrate's conclusion that he does not appear to provide structure or appreciate G.L.'s "medical/nutritional/educational" needs is not supported by the evidence. During her testimony, however, appellee observed that appellant allowed G.L. to consume sugary foods and beverages, despite contrary recommendations from the child's dentist and dietician. Moreover, during his testimony, appellant stated that if he were made residential parent, he would remove G.L. from her current school into a district closer to his residence. Although this decision may be premised upon proximity and convenience, it would undermine the stability G.L. has attained at her current school. This could be the basis of the magistrate's conclusion relating to G.L.'s current educational needs.

8

{¶29} We recognize that appellant testified that he did value his daughter's well-being and we do not question the authenticity of this testimony. Each party testified about the manner in which they attend to G.L.'s needs; and each party was critical of the opposing party's particular parenting methods. In the end, the magistrate found appellee more credible and that determination must be accorded deference to the extent it was premised, as it was in this case, upon the evidence and testimony.

{¶30} Appellant next opposes the magistrate's conclusion that he appears to "dote" on G.L. He further takes issue with the magistrate's conclusions that he allows G.L. to make too many independent decisions, rather than making those decisions for her. First, the term "dote" is not necessarily a pejorative term. It implies the "doter" is extremely fond and devoted to another. In this instance, the magistrate apparently found appellant's parenting choices, which included permitting her to have some sweets and juices, notwithstanding her dental issues, to be somewhat objectionable. Again, we acknowledge appellant testified he does not allow the child to consume unreasonable foods and requires her to brush her teeth twice a day; nevertheless, the magistrate found mother's testimony, which indicated appellant permitted G.L. to consume at least some problematic foods which caused her dental problems, more credible and, because it was grounded on evidence before the court, we will not disturb this conclusion.

{¶31} Finally, appellant argues there was no evidence to support the magistrate's conclusion that, if he were made residential parent, he would continue to diminish G.L.'s relationship with appellee. While the magistrate's conclusion is speculative, it must be viewed in the context of the facts of the case. Prior to the hearing, appellant made numerous allegations, to both the Ashtabula Sheriff's

Department and Children's Services, that appellee or her boyfriend were abusing G.L., both physically and sexually. These allegations and reports may have been initially based upon appellant's concerns for G.L.'s safety; he persisted, however, after the initial complaints were found to lack merit, to make the reports. Moreover, appellee testified appellant is standoffish, does not communicate with her, and calls her names and curses at her in G.L.'s presence. This behavior all occurred while the parties had a shared parenting plan. It was not unreasonable for the magistrate to infer that the episodes would continue if appellant became the primary parent. Such behavior could very easily lead to significant alienation of G.L. from her mother. Hence, we do not perceive the magistrate's conclusion, in light of appellant's behavior toward appellee, to lack a reasonable foundation.

{¶32} We therefore hold the magistrate conducted a thorough inquiry into G.L.'s best interests and her conclusions were supported by the manifest weight of the evidence. Accordingly, the trial court did not abuse its discretion in adopting the magistrate's decision and recommendations.

{¶33} Appellant's second assignment of error lacks merit.

{¶34} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas, Domestic Relations Division, is affirmed.


TIMOTHY P. CANNON, J.,

THOMAS R. WRIGHT, J.,

concur.

10